NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5716-12T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARKEES PRUITT,

    Defendant-Appellant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| November 26, 2014 |
| APPELLATE DIVISION |

Argued November 12, 2014 – Decided November 26, 2014

Before Judges Reisner, Koblitz[1] and Haas.

On appeal from the Superior Court of New
Jersey, Law Division, Cape May County,
Indictment No. 09-08-0662.

Jason A. Coe, Assistant Deputy Public
Defender, argued the cause for appellant
(Joseph E. Krakora, Public Defender,
attorney; Mr. Coe, of counsel and on the
brief).

Gretchen A. Pickering, Assistant Prosecutor,
argued the cause for respondent (Robert L.
Taylor, Cape May County Prosecutor,
attorney; Ms. Pickering, of counsel and on
the brief).

_____

[1] Judge Koblitz did not participate in oral argument. However,
with consent of counsel she has joined in this opinion. R.
2:13-2(b).

The opinion of the court was delivered by

REISNER, P.J.A.D.

Following a remand from this court, <u>State v. Pruitt</u>, 430 <u>N.J. Super.</u> 261 (App. Div. 2013), the Law Division held a hearing and determined that during jury selection at defendant's criminal trial, the prosecutor's use of a peremptory challenge to remove the only African-American juror did not "disclose a constitutional violation." Defendant Markees Pruitt appeals from the remand order dated July 9, 2013. After reviewing the record in light of the applicable legal standards, we affirm.

I

The background is set forth at length in our prior opinion and need not be repeated here. In brief, defendant was on trial for multiple counts of illegal drug distribution, and the State's case was based on evidence of a series of drug purchases from defendant by undercover police officers. Defendant is African-American, and there were only two African-Americans in the jury pool. One African-American juror was excused for cause, and the prosecutor later excused the other, who was Juror Thirteen, using a peremptory challenge. As soon as the prosecutor used the peremptory challenge, defense counsel asked the trial judge to conduct a hearing pursuant to <u>State v. Gilmore</u>, 103 <u>N.J.</u> 508, 535-39 (1986). <u>See also</u> <u>Batson v.</u>

Kentucky, 476 U.S. 79, 96-98, 106 S. Ct. 1712, 1723-24, 90 L. Ed. 2d 69, 87-89 (1986). The judge denied the request because the prosecutor had only excused one African-American juror.

On appeal, we concluded that the judge's decision was contrary to the principles set forth in State v. Osorio, 199 N.J. 486 (2009), which stated the following standards for determining whether a defendant has presented a prima facie case in mounting a Gilmore challenge:

> In determining whether a defendant has produced evidence sufficient "to draw an inference that discrimination has occurred[,]" the Court directed trial courts to consider the following factors:
>
> > (1) that the prosecutor struck most or all of the members of the identified group from the venire; (2) that the prosecutor used a disproportionate number of his or her peremptories against the group; (3) that the prosecutor failed to ask or propose questions to the challenged jurors; (4) that other than their race, the challenged jurors are as heterogeneous as the community[.]
>
> [Pruitt, supra, 430 N.J. Super. at 270-71 (first alteration in original) (quoting Osorio, supra, 199 N.J. at 504).]

Applying those standards to the circumstances presented by this case, we determined that a remand was required:

> [B]ecause there was only one qualified member of the cognizable group in the jury panel; the defendant was also a member of

that same group; the prosecutor failed to ask the juror any follow-up questions; and, other than her race, the juror was as heterogeneous as the community as a whole, the trial judge should have required the prosecutor to explain his non-discriminatory reason for the challenge.

[Id. at 264.][2]

Since the original trial judge was no longer sitting in the Criminal Division, the remand was conducted by a second judge. At the remand hearing, the second judge required the prosecutor to explain his reasons for striking Juror Thirteen. The

---

[2] The "heterogeneous" standard warrants a brief clarification. It is drawn from People v. Wheeler, 583 P.2d 748 (Cal. 1978), where the court noted that in establishing a prima facie case, a defendant may show that the prosecutor excused jurors who "share only this one characteristic -- their membership in the group -- and that in all other respects they are as heterogeneous as the community as a whole." Id. at 764 (quoted in Gilmore, supra, 103 N.J. at 536). In a footnote, illustrating what "heterogeneous" meant in that context, Wheeler explained: "For example . . . it may be significant if the persons challenged, although all black, include both men and women and are of a variety of ages, occupations, and social or economic conditions." Id. at 764 n.27. Obviously, that example cannot be applied where the prosecutor has only excused one minority juror. However, it is still relevant whether that one juror has characteristics in common with other jurors whom the prosecutor did not excuse; whether the juror has characteristics similar to other excused jurors; or whether the juror has a unique characteristic, other than his or her race, that could warrant the use of a peremptory challenge. By analogy with the employment discrimination cases cited in Gilmore and Osorio, it is relevant whether the prosecutor treated similarly situated minority and non-minority jurors the same or differently. See Gilmore, supra, 103 N.J. at 533-34 & n.7; Osorio, supra, 199 N.J. at 500-01.

prosecutor stated that he asked that she be excused because she worked at the Woodbine Developmental Center (Center), a residential facility for men with developmental disabilities. The prosecutor recalled that, during voir dire, the juror told the court that she took care of the men at the Center. The prosecutor told the second judge that he typically would use peremptory challenges to excuse social workers, because he felt they were too likely to be sympathetic to the accused, and he perceived Juror Thirteen's job to be akin to that of a social worker. The prosecutor also stated that over the years his office had prosecuted a number of both residents and employees from the Center for drug offenses and other crimes, and as a result, he always struck jurors who worked there.

In his argument, defense counsel did not compare Juror Thirteen to any of the other jurors whom the prosecutor excused or did not excuse. In other words, he did not offer any specific evidence that the prosecutor's explanation was unreasonable, not genuine, or a pretext for discrimination. Rather, he argued that, without the presence of Juror Thirteen, the remand placed the defense in the unfair position of being unable to ask the court to direct further questions to the juror, designed to address the prosecutor's expressed concerns about her possible bias.

In rejecting the defendant's position, the judge noted that recalling Juror Thirteen was not within the scope of the remand. He also evaluated the prosecutor's explanation and found that it was neutral, plausible, case specific, and not "a ruse" to cover up discrimination. He therefore concluded that the defense had not carried its burden of demonstrating a Gilmore violation.

## II

As the Court held in Osorio, once a defendant presents a prima facie case that the prosecutor made discriminatory use of a peremptory challenge, the prosecutor must present a clear and specific explanation justifying the peremptory challenge "'on the basis of concerns about situation-specific bias.'" Osorio, supra, 199 N.J. at 504 (quoting Gilmore, supra, 103 N.J. at 537).

> In gauging whether the party exercising the peremptory challenge has met its burden, the trial court must engage in a balancing process: it must determine whether the proffered explanations are genuine and reasonable grounds for believing that potential jurors might have situation-specific biases that would make excusing them reasonable and desirable, given the aim of empanelling a fair and impartial petit jury, or, on the other hand, sham excuses belatedly contrived to avoid admitting acts of group discrimination.
>
> [Id. at 504-05 (internal quotation marks omitted) (quoting Gilmore, supra, 103 N.J. at 537-38).]

The trial court must make specific findings as to each allegedly improper challenge, to determine whether the State's explanation is relevant to the specific case, and whether there is any evidence that the explanation is nonetheless apparently pretextual. For example, the court should consider whether the prosecutor was even-handed in excusing non-minority jurors with that same allegedly disqualifying characteristic. Id. at 506 (citing State v. Clark, 316 N.J. Super. 462, 473-74 (App. Div. 1998)).

On this appeal, we review the trial court's decision for abuse of discretion, so long as the judge properly applied the legal standards set forth in Osorio. See id. at 509. Because the second judge had the opportunity to hear the prosecutor's explanation first-hand, we also owe some deference to his ability to gauge the credibility of the explanation. See State v. Locurto, 157 N.J. 463, 474 (1999).

Having reviewed the entire voir dire transcript, we find no abuse of the judge's discretion in reaching his conclusion. We agree with the second judge that the prosecutor's explanation was reasonable, related to the case, and not obviously pretextual.[3]  We cannot say it was unreasonable for the

---

[3] Some of the trial judge's language was ill-chosen, for example, in stating that the prosecutor's reason was not "ridiculous."

(continued)

A-5716-12T4

prosecutor to excuse a juror whose job he perceived as being akin to social work, and some of whose clients may have been prosecuted by his office.[4] The judge did not specifically compare Juror Thirteen to any other jurors, but on the other hand, defense counsel did not argue that there were any other allegedly similarly situated jurors whom the prosecutor did not excuse. Based on our own review of the record, we note that the court excused for cause a juror who worked at a drug treatment facility and who expressed "empathy" for defendant.

On this appeal, defendant argues for the first time that the prosecutor did not strike a number of jurors who themselves had drug or alcohol problems in the past or who had relatives with drug problems. We conclude those issues were waived, because the judge had no opportunity to consider them and the

---

(continued)
That is not the standard for judging the legitimacy of the prosecutor's stated reason. See Clark, supra, 316 N.J. Super. at 469-70. However, viewing that language in the context of the judge's entire oral opinion we conclude he applied the correct standard. Nonetheless, we have carefully scrutinized the record ourselves and agree with his ultimate conclusion.

[4] There was no evidence as to the racial composition of the workforce at the Center, and hence no basis to infer that a prosecutor's invariable habit of striking Center employees from juries was more likely to be a proxy for racial discrimination. We note with disapproval defendant's citation of other facts about the Center that are not in the record. We decline to consider factual assertions that are not of record.

prosecutor had no opportunity to respond to them. See State v. Robinson, 200 N.J. 1, 20-22 (2009). However, even if we consider the issues, we find the argument unpersuasive. Defendant was accused of being a drug dealer, and a prosecutor could rationally believe that jurors who had drug problems in the past, or had family members with drug problems, would not necessarily be sympathetic to a drug dealer. Further, several jurors with family members who had drug problems also had relatives who were police officers.

Defendant also points out, for the first time on appeal, that the prosecutor did not excuse a juror (Juror One) with past experience caring for the elderly. However, that juror had only a few years as a direct caregiver before she was "promoted to [working in] the office." By contrast, Juror Thirteen had spent twenty years caring for the residents at the Center. There also was no evidence that any of the employees or clients of Juror One's elder care agency had been criminally prosecuted, and early in the voir dire she stated that she was related to a police officer.

In thus reviewing the evidence de novo, because these issues were not presented to the trial court, we nonetheless emphasize that it was defendant's burden to prove a Gilmore violation by a preponderance of the evidence. Osorio, supra,

199 N.J. at 503-04. This means that it was defendant's burden to specify for the trial court, at the time of the remand hearing, which allegedly comparable jurors the prosecutor failed to strike. Further, as noted above, in failing to raise these issues during the remand hearing, defendant deprived the prosecutor of the opportunity to explain why he did not strike the allegedly comparable jurors. Defendant's additional appellate arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

In summary, we find no abuse of discretion or other error in the remand court's decision. Thus, defendant's conviction stands.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5716-12T4